UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Dwayne D. Stovall and Sengkham Douangthammavngsa, | Civil No. 05-2593 (PAM/JJG) |
| Plaintiffs, | |
| v. | **MEMORANDUM AND ORDER** |
| Alexander O. Lakanu, | |
| Defendant. | |

This matter is before the Court on Defendant Alexander O. Lakanu's Motion to Dismiss and Motion for Summary Judgment, and Plaintiffs Dwayne D. Stovall and Sengkham Douangthammavngsa's Motion for Partial Summary Judgment. For the reasons set forth below, the Court denies all of the Motions.

**BACKGROUND**

This action arises from a real estate transaction between Douangthammavngsa and Lakanu for a home located at 8747 Chicago Avenue South in Bloomington, Minnesota. Douangthammavngsa immigrated to the United States from Laos about twenty years ago. She is now married to Stovall, but they were not married at the time of the transaction. Lakanu was a licensed Minnesota real estate salesperson during the relevant events.

In 2003, Douangthammavngsa owned her home at 8747 Chicago Avenue South as a single homeowner. She experienced some financial difficulties, and the mortgage holder commenced foreclosure proceedings. The parties dispute whether Lakanu first contacted

Douangthammavngsa or vice versa, but in either event, the parties began discussing the possibility of Lakanu purchasing the property from Douangthammavngsa. During the negotiations, Douangthammavngsa and Lakanu discussed executing a contract for deed in conjunction with the purchase agreement. Douangthammavngsa claims that the parties explicitly agreed to the contract for deed but that Lakanu never provided the written document. Lakanu denies that the parties finalized any terms on a contract for deed.

On May 15, 2003, Douangthammavngsa and Lakanu executed a purchase agreement in the amount of $195,300. The agreement did not mention a contract for deed. Shortly after the purchase agreement was signed, Douangthammavngsa and Lakanu executed a seller facilitator services agreement, which required Douangthammavngsa to pay Lakanu an eleven percent commission. Plaintiffs contend that Lakanu acted unilaterally in raising his commission from four to eleven percent, despite Douangthammavngsa's signature on the document. Lakanu concedes that he wrongfully backdated the document to May 14, 2003, but he denies that he acted unilaterally. Lakanu further admits that he did not provide any truth-in-lending forms to Douangthammavngsa.

Douangthammavngsa claims that Lakanu took advantage of her limited ability to read and understand English and that she was unaware of the nature of the entire transaction. According to Stovall, he and Douangthammavngsa had no idea that the property would be titled in Lakanu's name or that Lakanu intended to take out a mortgage on the property. Stovall further alleges that Lakanu explained the transaction as follows: their monthly payment would increase from $1,120 to $1,395; they would receive $2,500 cash from the

transaction; and they would have two years to pay off a new $30,000 loan. In contrast, Lakanu thought that after he purchased the property, Plaintiffs would lease the property from him for six months to establish a payment history, and then they would execute the contract for deed.

According to Douangthammavngsa, Lakanu had promised to give her an earnest money check in the amount of $9,765 after the closing. Lakanu disagrees, asserting that the parties agreed to apply the money toward the down payment, which would reduce Plaintiffs' monthly rental payment. The purchase agreement itself reflects that Lakanu paid no earnest money but paid $9,765 in cash as a down payment toward the purchase price. The settlement statement reflects that Plaintiffs, as sellers, were due no cash, but actually owed $189.14. Lakanu paid this amount for Plaintiffs at the closing, based on his prior representation that the transaction would not cost them any money.

Lakanu claims he approached Plaintiffs at the end of the six-month lease period about executing the contract for deed. However, Stovall was incarcerated at the time, and according to Lakanu, Douangthammavngsa could not afford to purchase the property by herself. Douangthammavngsa recalls that Lakanu knocked on her door and demanded $10,000 in cash. Douangthammavngsa did not have that much money at the time, and further, she believed she was entitled to a two-year payoff period. In January 2004, Lakanu advised Plaintiffs that he would list the home for sale, and he apparently did so in April 2004. According to Lakanu, the parties continued to operate under the oral month-to-month lease agreement until September 2004, when Douangthammavngsa stopped paying rent and

refused to let Lakanu on the premises.

Approximately a year after the closing, Plaintiffs brought a complaint against Lakanu before the Minnesota Association of Realtors Professional Standards Committee. The hearing panel determined that Lakanu violated several ethical rules by involving Douangthammavngsa in a false statement on the settlement statement, by naming a false consideration on the statement, and by failing to provide written disclosures and agreements. The panel also found that Lakanu did not make any false or misleading statements about his business practices, commission, or taking an interest in the property.

In September or October 2005, Plaintiffs wrote a letter to Lakanu in which they "accepted" his "offer" of $211,350. (Lakanu Aff. Exs. G, H.) There is no record of a response by Lakanu. In June 2006, Lakanu drafted a purchase agreement for a one-year contract for deed in the amount of $216,000. There is no record of a response by Plaintiffs.

Based on these events, Plaintiffs are suing Lakanu under the Truth-in-Lending Act (TILA) and Home Ownership and Equity Protection Act (HOEPA), 15 U.S.C. § 1601 et seq. and 12 C.F.R. § 226.1 et seq.; and under the Minnesota Prevention of Consumer Fraud Act (CFA), Minn. Stat. §§ 325F.68-.70. Plaintiffs are also bringing claims for civil theft under Minn. Stat. § 609.53, subd. 4; common law fraud; breach of contract; negligent misrepresentation; promissory estoppel; equitable estoppel; unjust enrichment; breach of fiduciary duty; negligence; fraudulent inducement of contract; and slander of title. Lakanu has counterclaimed, asserting that he is the owner of the property and seeking declaratory and monetary relief.

**DISCUSSION**

**A.     Lakanu's Motion to Dismiss**

   1.     <u>Standard of Review</u>

Lakanu brings his Motion to Dismiss under Federal Rule of Civil Procedure 12(b)(1), challenging the Court's subject matter jurisdiction. A motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1) may challenge the complaint either on its face or on the factual truthfulness of its averments. <u>Titus v. Sullivan</u>, 4 F.3d 590, 593 (8th Cir. 1993). Lakanu is challenging the complaint on its face.

When a defendant challenges the complaint on its face, the Court reviews the pleadings and affords the plaintiff the same protections that it would receive on a Rule 12(b)(6) motion to dismiss. <u>See</u> <u>Osborn v. United States</u>, 918 F.2d 724, 729 n.6 (8th Cir. 1990). The Court takes the factual allegations as true and will dismiss the complaint only if the plaintiff fails to allege an essential element for subject matter jurisdiction. <u>See</u> <u>Titus</u>, 4 F.3d at 593. When determining whether to grant a motion to dismiss for failure to state a claim upon which relief may be granted, the Court must construe the pleadings in the light most favorable to the non-moving party and view the facts alleged in the complaint as true. <u>See</u> Fed. R. Civ. P. 12(b)(6); <u>Hamm v. Groose</u>, 15 F.3d 110, 112 (8th Cir. 1994). The Court also must draw all reasonable inferences in the non-moving party's favor. <u>United States v. Stoltz</u>, 327 F.3d 671, 674 (8th Cir. 2003). Dismissal is warranted only if relief cannot be afforded under any set of facts that could be proved consistent with the allegations. <u>Hafley v. Lohman</u>, 90 F.3d 264, 266 (8th Cir. 1996).

    2.    <u>Merits</u>

Lakanu first seeks dismissal of the TILA and HOEPA claim based on TILA's one-year statute of limitations. TILA provides for statutory penalties if a creditor does not make certain disclosures. 15 U.S.C. § 1640(a). To prevail on a claim for damages for a TILA violation, a plaintiff must bring suit within one year from "the date of the occurrence of the violation." <u>Id.</u> § 1640(e). However, if the disclosures are never made, there is a continuing right to rescind, which is not dependent on the one-year limitations period imposed on a claim for damages. <u>Rudisell v. Fifth Third Bank</u>, 622 F.2d 243 (6th Cir. 1980). The right of rescission "shall expire three years after the date of consummation of the transaction or upon sale of the property, whichever occurs first, notwithstanding the fact that" the required disclosures have not been made. 15 U.S.C. § 1635(f).

The facts in the Complaint occurred in 2003. Plaintiffs filed this action on November 8, 2005. Thus, if Plaintiffs were seeking damages under TILA, the claim would be barred. However, Plaintiffs are seeking rescission under § 1635(f) because Lakanu never provided the required disclosures. Thus, the TILA and HOEPA claim is not barred.

Lakanu next suggests briefly that Plaintiffs are suing for both rescission of a contract and for damages under the contract, which he claims are mutually exclusive remedies. However, seeking mutually exclusive remedies in a complaint is not a basis for dismissal. <u>See</u> Fed. R. Civ. P. 8(a) (permitting plaintiffs to plead in the alternative). Additionally, this is not a typical contract situation because TILA, not state contract law, provides for the remedy of rescission.

Finally, Lakanu asks the Court not to exercise supplemental jurisdiction over Plaintiffs' state law claims. This argument fails because the Court has not dismissed Plaintiffs' federal law claims. Accordingly, the Court denies Lakanu's Motion to Dismiss in its entirety.

**B.    Plaintiffs' Motion for Partial Summary Judgment**

    1.    Standard of Review

Summary judgment is proper if there are no disputed issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). As the United States Supreme Court has stated, "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy, and inexpensive determination of every action.'" Celotex Corp. v. Catrett, 477 U.S. 317, 327 (1986) (quotation omitted). The Court must view the evidence and the inferences that may be reasonably drawn from the evidence in the light most favorable to Lakanu as the non-moving party. See Enter. Bank v. Magna Bank, 92 F.3d 743, 747 (8th Cir. 1996).

The moving party bears the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. Id. A party opposing a properly supported motion for summary judgment may not rest on mere allegations or denials, but must set forth specific facts in the record showing that there is a genuine issue for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986); Krenik v. Le Sueur, 47 F.3d 953, 957 (8th Cir. 1995).

    2.    <u>Merits</u>

Plaintiffs move for summary judgment only on the CFA claim, advancing two arguments. They first contend that the record establishes a violation of the CFA as a matter of law. Plaintiffs also argue that Lakanu is collaterally estopped from litigating the claim.

The CFA defines an unlawful fraud, misrepresentation, or deceptive practice as follows:

> The act, use, or employment by any person of any fraud, false pretense, false promise, misrepresentation, misleading statement or deceptive practice, with the intent that others rely thereon in connection with the sale of any merchandise, whether or not any person has in fact been misled, deceived, or damaged thereby . . . .

Minn. Stat. § 325F.69, subd. 1. Plaintiffs assert that Lakanu's deceptive practices consisted of failing to provide written agreements on the contract for deed arrangement and the lease, back-dating the document providing for an increased eleven percent commission, keeping $9,765 in earnest money, failing to disclose the total amount of compensation received, failing to provide documentation of the transaction to his employer, not providing TILA disclosures, and taking advantage of Douangthammavngsa's limited English and lack of sophistication in real estate matters.

If the Court were to view the facts in the light most favorable to Plaintiffs, Lakanu's actions could very well be considered deceptive or fraudulent. However, the Court must view the record favorably to Lakanu, and the record is replete with genuine issues of material fact. Of particular trouble to Plaintiffs is the lack of evidence indicating that Lakanu acted with the requisite intent. Lakanu concedes that he employed some careless business

practices, but denies he intended for Plaintiffs to rely on any purported misrepresentations in connection with the sale of the house.

After examining the parties' evidence, the Court finds that Lakanu's failure to provide written agreements on the contract for deed arrangement and the lease were not necessarily fraudulent, especially since Lakanu's characterization and understanding of the terms did not change. Further, there is no evidence that Lakanu failed to reduce the agreements to writing for the express purpose of defrauding Plaintiffs. Viewed in the light most favorable to Lakanu, the record shows that Lakanu was merely careless in this aspect of his dealings with Plaintiffs. As far as Lakanu's back-dating the seller facilitator services agreement, Douangthammavngsa does not allege she was unaware of the eleven percent commission rate or that Lakanu back-dated the document in order to defraud her into selling her home. Plaintiffs accuse Lakanu of wrongfully keeping $9,765, but this accusation is rebutted by the settlement statement, which does not reflect this amount as owed to the sellers. This contention is also refuted by Lakanu's statement that the amount was put toward the down payment to benefit Plaintiffs by reducing their monthly rental payment.

Plaintiffs claim that Lakanu failed to disclose the total amount of compensation he received, but this position is contradicted by a finding of the Minnesota Association of Realtors Professional Standards Committee. The hearing panel found that Lakanu did not falsely represent his commission or his interest in the property. Further, Plaintiffs do not explain how Lakanu's failure to provide documentation of the transaction to his employer constituted fraud against Plaintiffs under the CFA or was an attempt to induce

9

Douangthammavngsa to sell her home.

Regarding Lakanu's failure to provide TILA disclosures, this also could be characterized as a careless business practice, and Plaintiffs have not explained how the omission was intended to induce Douangthammavngsa to sell. Finally, Plaintiffs' assertion that Lakanu attempted to take advantage of Douangthammavngsa's limited English and lack of sophistication in real estate matters is contradicted by evidence that she has lived in the United States for twenty years and has engaged in at least one other real estate transaction.

Because numerous genuine issues of material fact exist on the CFA claim, the Court cannot grant summary judgment to Plaintiffs as a matter of law.

Turning to the issue of collateral estoppel, Plaintiffs argue that the doctrine applies to prevent Lakanu from opposing their CFA claim. Collateral estoppel bars the relitigation of issues that were litigated, determined, and essential to a prior action. Hauser v. Mealer, 263 N.W.2d 803, 806 (Minn. 1978). Collateral estoppel consists of the following elements: (1) the issues are identical; (2) there was a final judgment on the merits; (3) the party subject to estoppel was a party in the prior case; and (4) the party subject to estoppel had a full and fair opportunity to be heard on the issue. Aufderhar v. Data Dispatch, Inc., 452 N.W.2d 648, 650 (Minn. 1990).

Plaintiffs base their collateral estoppel argument on the results of the hearing panel of the Minnesota Association of Realtors Professional Standards Committee. The Court finds Plaintiffs' argument without merit, however, because the violations of ethical standards by Lakanu do not equate to deceptive or fraudulent practices under the CFA. Lakanu's

ethical violations were (1) failing to protect and promote Douangthammavngsa's interests and treat all parties honestly; (2) exaggerating, misrepresenting, or concealing facts on the settlement statement; and (3) failing to memorialize certain agreements in writing. These ethical standards are not identical to the CFA's definition of deceptive or fraudulent practices, which requires a finding that the wrongdoer intended another person to rely on the misrepresentation or deceptive practice in connection with a sale.

In concluding that Lakanu did not treat Douangthammavngsa honestly, the hearing panel noted that Lakanu advised her of how he was going to report the $9,765 on the settlement statement, thereby involving her in his misrepresentation. However, Lakanu's misrepresentation was made on the settlement statement, not to Douangthammavngsa. Further, Lakanu advised her of his course of action, and she assented to it; she was not deceived by it. Thus, the administrative proceedings do not conclusively establish that Lakanu intended for Douangthammavngsa to rely on the false statement in selling her home. The hearing panel also sanctioned Lakanu for failing to reduce disclosures and agreements to writing, but it made no findings that this conduct was fraudulent or deceptive.

In sum, the issues in this civil action and the ethics proceedings are not identical. See In re Panel Case No. 17289, 669 N.W.2d 898, 905 (Minn. 2003). There are fundamental differences between professional ethical standards and the law. See id. (finding that an imposition of ethical sanctions did not collaterally estop an attorney from challenging sanctions under Rule 11). Accordingly, Plaintiffs' request for summary judgment based on collateral estoppel is denied.

11

**C.     Lakanu's Motion for Summary Judgment**

Lakanu filed a Motion for Summary Judgment on October 25, 2006, only seven days before the hearing scheduled on the first two motions. Notwithstanding the untimeliness of the Motion, the Court finds the argument made therein without merit. Lakanu requests summary judgment based on the alleged bad faith of Plaintiffs' affidavits under Federal Rule of Civil Procedure 56(g). However, Rule 56(g) does not provide for an award of summary judgment as a sanction for a party's submission of affidavits made in bad faith; it provides only that a court may award a party reasonable expenses in responding to such affidavits or issue a finding of contempt. See Fed. R. Civ. P. 56(g). Lakanu's Motion for Summary Judgment is accordingly denied.

**CONCLUSION**

Plaintiffs' TILA and HOEPA claim for rescission is not barred by TILA's one-year statute of limitations, and Plaintiffs are permitted to plead mutually exclusive remedies. Thus, Lakanu is not entitled to dismissal. Plaintiffs are not granted summary judgment on their CFA claim because genuine issues of material fact exist as to whether Lakanu's statements and acts were fraudulent or deceptive, and whether he intended for Douangthammavngsa to rely on any misrepresentations or fraudulent acts. Additionally, collateral estoppel does not apply to establish a CFA violation by Lakanu. Finally, Lakanu is not entitled to summary judgment under Rule 56(g) because even if Plaintiffs' affidavits were made in bad faith, summary judgment is not an appropriate remedy. Accordingly, **IT IS HEREBY ORDERED** that:

1. Lakanu's Motion to Dismiss (Docket No. 36) is **DENIED**;

2. Plaintiffs' Motion for Partial Summary Judgment (Docket No. 42) is **DENIED**;

3. Lakanu's Amended Motion to Dismiss (Docket No. 44) is **DENIED**; and

4. Lakanu's Motion for Summary Judgment (Docket No. 50) is **DENIED**.


Dated:  November 17, 2006

                                                s/Paul A. Magnuson
                                                Paul A. Magnuson
                                                United States District Court Judge